IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MICHAEL DAVID OGDEN as Special Administrator of the Estate of CHARLES OGDEN,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF MAUI; CLIFFORD PACHECO; JOHN DOES 1-10; AND DOE ENTITIES 1-5,<br><br>Defendants. | CIVIL NO. 06-00113 JMS/LEK<br><br>ORDER GRANTING COUNTY OF MAUI AND CLIFFORD PACHECO'S MOTION FOR SUMMARY JUDGMENT |

## ORDER GRANTING COUNTY OF MAUI AND CLIFFORD PACHECO'S MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Plaintiff Michael David Ogden ("Plaintiff"), as Special Administrator of the Estate of Charles Benson Ogden ("Ogden"), alleges that the County of Maui (the "County") and Maui Police Officer Clifford Pacheco ("Officer Pacheco"), (collectively "Defendants"), violated Ogden's constitutional and state rights when Officer Pacheco shot and killed Ogden. Currently before the court is Defendants' Motion for Summary Judgment on all claims. For the following reasons, the court GRANTS Defendants' Motion for Summary Judgment.

## II. **BACKGROUND**

### A.     **Factual Background**

On February 29, 2004 at 6:00 p.m., a woman placed a 911 call reporting that a man had exposed himself to children near Maui's Waiohuli Street beach access. Defs.' Concise Statement of Material Facts ("SMF") 1.[1] The Maui Police Department ("MPD") dispatched Officer Pacheco to investigate, and told him that the individual was a Caucasian male wearing a blue baseball cap, blue shorts, no shirt and a backpack. *Id.* at 2-3. At Waiohuli Street, Officer Pacheco met Renee Johnson, who told him that she was the caller and that the individual was at the end of the beach access. *Id.* at 4. Officer Pacheco, wearing his MPD uniform and badge, walked down the beach access and saw Ogden, who had a backpack, but did not otherwise match dispatch's description. *Id.* at 5; Pacheco Decl. ¶ 3. Officer Pacheco then walked to the shoreline, and saw no one matching the description given. Defs.' SMF 6.

Officer Pacheco went back to the beach access and asked Ogden for his name; Ogden responded "Why? What did I do? I didn't do nothing wrong." *Id.* at 7. Officer Pacheco saw Johnson waving her arms to signal him, and he went

---

[1] For purposes of this Motion, Plaintiff does not dispute many of the facts set forth in Defendants' SMF. Where Plaintiff does not dispute a particular fact, the court cites directly to Defendants' SMF.

back to her.  *Id.* at 8.  Johnson informed him that Ogden was the individual she

reported.  *Id.* at 9.  Officer Pacheco turned back to the beach access, and saw that

Ogden was headed north up the beach.  *Id.* at 10.

      To catch up with Ogden, Officer Pacheco cut across John Lucia's

yard.  Lucia asked Officer Pacheco, "who we running after?", and Officer Pacheco

responded by describing Ogden.  *Id.* at 13.  Lucia ran past Officer Pacheco, turned

back, pointed north, and told Officer Pacheco that Ogden was running.  *Id.* at 14.

Lucia continued to run north up the beach, and Officer Pacheco followed.  *Id.* at

15.

      Lucia caught up with Ogden, and informed him that the police wanted

to speak with him.  Pacheco Decl. ¶ 12; Defs.' Ex. H at 14.  Ogden responded "Oh,

no," pulled out a canister of bear deterrent (an industrial form of pepper spray)

from his backpack, and attempted to spray Lucia.  Defs.' Ex. H at 14.  Lucia

backed up while Ogden continued to spray him, and then tackled Ogden to the

ground.[2]  Pacheco Decl. ¶ 13; Pl.'s Ex. 4 at 15; Defs.' Ex. H at 17.  Lucia asserts

that he felt threatened by Ogden, Pl.'s Ex. 4 at 48, and felt an intense burning from

the light spray he received on his face.  Defs.' Ex. H at 15.

---

[2]  During the hearing, Plaintiff argued that Ogden was tackled out of the blue, and
therefore had reason to use his bear deterrent.  The evidence on the record, however, indicates
that Lucia tackled Ogden only after Ogden sprayed him with bear deterrent.

Officer Pacheco saw Ogden pull out the canister and Lucia tackle Ogden. Pacheco Decl. ¶ 13; Pls.' Ex. 3. Officer Pacheco was shocked by the amount of spray that came out of Ogden's canister, as well as how far the spray traveled. Defs.' SMF 21. By the time Ogden was able to stand up, Officer Pacheco was within five or six feet of Ogden. Pl.'s Ex. 4 at 18. Officer Pacheco yelled for Ogden to "stop, drop the spray, drop the spray." Pl.'s Ex. 3 at 11. Instead, Ogden turned to Officer Pacheco, and redirected the spray to him. *Id.* At the same time, Officer Pacheco attempted to spray Ogden with his Cap-Stun pepper spray, Pacheco Decl. ¶ 17, Defs.' Ex. H at 19, Pl.'s Ex. 3, but it had no effect on and/or did not reach Ogden. Defs.' SMF 30.

The bear deterrent used by Ogden is far worse than the Cap-Stun Officer Pacheco had been trained to use. *Id.* at 34. Cap-Stun is designed for personal protection up to 15 feet, *id.* at 36, whereas bear deterrent has a much greater delivery system, is designed to expose a larger area and cover up to 30 feet, and may cause irreversible eye damage. *Id.* at 37-38. Ogden's spray hit Officer Pacheco like a huge cloud, coating his head and face. *Id.* at 31. Ogden's spray was thick and yellow, burned Officer Pacheco's face and eyes, blurred his vision, and caused the worst pain he has ever felt. *Id.* at 32. The spray was dripping off his chin, was on his throat, and all over his vest. Defs.' Ex. H at 19. Officer

4

Pacheco's attempts to clear his eyes by blinking them repeatedly (called

"strobing") were ineffective and only briefly cleared his vision.  Defs.' SMF 35,

40.

Officer Pacheco took out his gun, pointed it at Ogden, and told Ogden

repeatedly and loudly to stop.  Pls.' Ex. H at 20, 25, 47.  Ogden continued to spray

and advance toward Officer Pacheco.  *Id.* at 21.  Officer Pacheco believed that

Ogden intended to kill him and/or Lucia because he did not leave, refused to drop

the deterrent, kept spraying the deterrent, and continued advancing.  Defs.' SMF

44.  Officer Pacheco believed that shooting Ogden was the only option to protect

himself and Lucia.  *Id.* at 45.  Being in closer proximity to Ogden was not a

reasonable option, *id.* at 46, and Officer Pacheco was concerned that Ogden would

take his gun and use it to kill him and/or Lucia.  *Id.* at 47.  Officer Pacheco

continued to yell at Ogden to stop, and then fired a number of shots at him while

Ogden continued to spray the bear deterrent.  Defs.' Ex. H at 21, 25; Pacheco

///

///

///

///

///

Decl. ¶¶ 25-26.  At the time Officer Pacheco fired his gun, he was 12 feet away from Ogden, Pl.'s Ex. 6 at 6,[3] who was standing in front of the ocean with no one behind him.  Defs.' SMF 50.

After Officer Pacheco fired his gun, Ogden was still standing. Pacheco Decl. ¶ 26.  Ogden looked at his hand, stopped, and went to the ground. *Id.*  Officer Pacheco kept his gun pointed at Ogden,[4] Pacheco Decl. ¶ 27, and Lucia heard Officer Pacheco screaming, "My eyes, my eyes, I can't see."  Pl.'s Ex. 5 at 21.  Ogden then stood up and said, "Fuck, I can't believe you shot me." Pacheco Decl. ¶ 28.  Officer Pacheco told Ogden to "stay right there, not to move, and to get on the ground."[5]  *Id.* ¶ 28; Pl.'s Ex. 5 at 21.  Officer Pacheco was in

---

[3] Defendants object to this exhibit as containing inadmissible hearsay.  For purposes of summary judgment, this objection is without merit.  "To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rule of Civil Procedure 56."  *Block v. City of L.A.*, 253 F.3d 410, 418-19 (9th Cir. 2001); *see also Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form.  We instead focus on the admissibility of its contents.").  Although the form of the evidence -- a typed statement of a police interview of George Rixey -- would make it objectionable at trial, the content of the exhibit is admissible at the summary judgment stage.

[4] The parties dispute whether Officer Pacheco went to the ocean to wash his face after this first round of shots.  This fact, however, is not material to a determination of the instant motion.

[5] Plaintiff asserts that "[i]t is unclear whether Officer Pacheco was yelling instructions to Mr. Ogden."  Pl.'s SMF 55.  The only evidence Plaintiff relies on is George Rixey's police interview, in which he stated that after the second round of shots, he was unsure whether he heard Officer Pacheco giving instructions to Ogden.  *See* Pl.'s Ex. 6 at 15.  Rixey was clear, however, that from his position 200 yards away, he "was not able to discern facial features or

(continued...)

6

excruciating pain and did not believe that he would be able to defend himself in a physical fight with Ogden.  Defs.' SMF 58.  Ogden did not obey Officer Pacheco's commands, and appeared to be backing up toward the ocean.[6]  Pl.'s Ex. 6 at 12. Officer Pacheco aimed at Ogden's center mass, and fired three rounds.  Pacheco Decl. ¶ 29; Defs.' Ex. H at 26.  Ogden fell to the ground, Defs.' Ex. H at 25, and did not recover.

Dr. Anthony Manoukian performed Ogden's autopsy on March 3, 2004.  Defs.' SMF 60.  Manoukian determined that Ogden was under the influence of marijuana at the time of his death.  Defs.' SMF 62.  Manoukian identified four gun-shot wounds: (1) to the right forearm, (2) to the posterior right shoulder with a wound trajectory back to front and right to left, (3) to the right mid back with a wound trajectory slightly back to front and upward, and right to left, and (4) to the right lower back with a wound trajectory back to front, right to left and slightly upward.  Defs.' Ex. D.  There was no evidence of close range firing.  *Id.*  From a review of the police report and informal interview of the detectives, it is

_____

[5](...continued)
hear any verbal comments from any of the three adults."  Rixey Decl. ¶ 3.

[6]  Defendants posit a slightly different version of events -- that after getting up after the first round of shots, Ogden again advanced toward Officer Pacheco, and did not turn away. Defs.' Ex. H at 25, 56, 57.  The court, of course, must view the facts presented in a light most favorable to Plaintiff.  Nonetheless, no witness saw Ogden turn or run away from Officer Pacheco at any time.  *See* Defs.' Ex. H at 56-57; Rixey Decl. ¶ 5.

7

Manoukian's opinion that "Ogden was shot while standing in an upright position with his right foot in front of his left and his body angled sideways, commonly referred to as a bladed stance, with his right arm extended, consistent with spraying bear repellent."  Manoukian Decl. ¶ 9.  In comparison, Plaintiff submitted the declaration of D.P. Van Blaricom,[7] who opines that Ogden's back was toward Officer Pacheco during the shots -- meaning that Ogden was most likely moving

---

[7] Defendants object to the declaration of D.P. Van Blaricom on two grounds.  First, Defendants argue that it impermissibly contains opinions regarding whether the conduct of Officer Pacheco comports with the Fourth Amendment.  "It is well-established . . . that expert testimony concerning an ultimate issue is not per se improper. . . .  However, an expert witness cannot give an opinion as to her *legal conclusion*, *i.e.*, an opinion on an ultimate issue of law." *Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1065 n.10 (9th Cir. 2002).  Because Van Blaricom's report does not include a legal conclusion regarding the reasonableness of Officer Pacheco's actions, the court rejects Defendants' argument.

Second, Defendants argue that his opinions have no basis in fact, and should be disregarded.  Plaintiffs appear to argue that these opinions are inadmissible pursuant to Federal Rule of Evidence 702.  The court recognizes that Van Blaricom's opinions offered in other actions have been questioned, and that Defendants may have valid objections to Van Blaricom's report.  *See Billington v. Smith*, 292 F.3d 1177, 1183 (9th Cir. 2002) (noting that the district court struck a portion of Van Blaricom's report because it appeared he had "padded his numbers"); *Kanae v. Hodson*, 294 F. Supp. 2d 1179, 1188 (D. Haw. 2003) (Van Blaricom's "conclusion that Hodson was saying he fired first is questionable.").  However, because Defendants have not briefed the Rule 702 issue in anything more than a cursory way and Plaintiff was not given a meaningful opportunity to respond, the court declines to resolve this issue on the record before it. *See Cortes-Irizarry v. Corporacion Insular De Seguros*, 111 F.3d 184, 188 (1st Cir. 1997) ("We conclude, therefore, that at the junction where *Daubert* intersects with summary judgment practice, *Daubert* is accessible, but courts must be cautious -- except when defects are obvious on the face of a proffer -- not to exclude debatable scientific evidence without affording the proponent of the evidence adequate opportunity to defend its admissibility."); *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 739 (3d Cir. 1994) ("Given the 'liberal thrust' of the federal rules it is particularly important that the side trying to defend the admissibility of evidence be given an adequate chance to do so." (internal citation omitted)); Reference Manual on Scientific Evid., 54-56 (2d ed. 2000) (noting that a summary judgment motion may be combined with a Fed. R. Evid. 104(a) motion in limine).

away from Officer Pacheco when he was shot.  Pls.' Ex. 8.  Van Blaricom further

suggests that Officer Pacheco could not have seen Ogden due to the bear deterrent

and sun in his eyes.  *Id.*

## B.   Procedural Background

On February 23, 2006, Plaintiff filed his Complaint alleging 42

U.S.C. § 1983 violations of Ogden's Fourth, Fifth, Eighth, Ninth, and Fourteenth

Amendment[8] rights against the County, Officer Pacheco and Lucia[9] (Count I),

negligent wrongful death against Officer Pacheco and Lucia (Count II), and

seeking punitive damages (Count III).

On January 30, 2008, the County and Officer Pacheco filed a Motion

for Summary Judgment on all claims.  On February 12, 2008, Plaintiff filed a

Motion to Continue Hearing on Defendants' Motion for Summary Judgment,

which the court granted in part on February 15, 2008.  On March 27, 2008,

Plaintiff filed an Opposition, and Defendants filed a Reply on April 3, 2008.  A

hearing was held on April 14, 2008.

---

[8]  At the hearing, Plaintiff confirmed that his claims were based on the Fourth Amendment only.

[9]  Plaintiff subsequently settled his claims against Lucia, and a stipulation of partial dismissal with prejudice was entered on March 6, 2008.

9

# III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Rule 56(c) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 316, 321 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).  "In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 321 (internal quotations omitted).

The burden initially lies with the moving party to show that there is no genuine issue of material fact.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  The moving party may discharge its burden by showing that there is "an absence of evidence to support the nonmoving party's case."  *Celotex*, 477 U.S. at 325.  "When the moving party has carried its burden under Rule 56(c) its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [and] come forward with specific facts showing that there is a genuine issue for trial."  *Matsushita Elec.*

10

*Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted).

An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is material if the resolution of the factual dispute affects the outcome of the claim or defense under substantive law governing the case. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

## IV. <u>DISCUSSION</u>

### A.     Section 1983 Claim

Defendants argue that they are entitled to summary judgment on Count I of the Complaint because (1) Officer Pacheco is entitled to qualified immunity because he did not violate Ogden's constitutional rights,[10] and even if there was a violation, the right violated was not clearly established, and (2)

---

[10] Plaintiff argued separately that none of Ogden's constitutional rights was violated, and then addressed qualified immunity. To avoid redundancy, the court addresses Officer Pacheco's reasonableness as part of the qualified immunity analysis.

Plaintiff cannot establish *Monell* liability against the County.  The court addresses each of these arguments.

### 1.     *Claim Against Officer Pacheco*

The defense of qualified immunity "shields government officials performing discretionary functions from liability for civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Scott v. Henrich*, 39 F.3d 912, 914 (9th Cir. 1994) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The defense of qualified immunity requires a two-part analysis.  First, the court must ask whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If no violation occurred on the alleged facts, this ends the inquiry.  *Id.*  "On the other hand, if a violation could be made out on a favorable view of the parties' submissions," the court must look to see whether the violated right was clearly established.[11]  *Id.*  Looking at both these factors, the court finds that Officer Pacheco is entitled to qualified immunity.

---

[11]  At times, the Ninth Circuit has articulated a three-part test to determine whether a police officer is entitled to qualified immunity.  *See Skoog v. County of Clackamas*, 469 F.3d 1221, 1229 (9th Cir. 2006).  Whether applying the two or three-part test, the court considers the same factors.

       *a.*     *Reasonableness of Officer Pacheco's Actions/Violation of Ogden's Constitutional Rights*

Plaintiff alleges that Officer Pacheco violated Ogden's Fourth Amendment rights when he shot and killed Ogden.  "Claims of excessive and deadly force are analyzed under the Fourth Amendment's reasonableness standard."  *Long v. City & County of Honolulu*, 511 F.3d 901, 906 (9th Cir. 2007) (*citing Graham v. Connor*, 490 U.S. 386, 395 (1989); *Tennessee v. Garner*, 471 U.S. 1, 7 (1985)).  The court "must determine whether this shooting was objectively reasonable in light of the facts and circumstances confronting the officer[] 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Id.* (*quoting Graham*, 490 U.S. at 396-97). *Long* explains this reasonableness standard as follows:

> The use of deadly force is reasonable only if the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.  We must allow for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving about the amount of force that is necessary in a particular situation.  Factors to consider include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

*Id.* (some citation and quotation signals omitted).

13

Reasonableness may exist even where the individual is attempting to flee the area. If an individual "threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given." *Garner*, 471 U.S. at 11-12. In judging reasonableness, the court also considers the risk of harm that Officer Pacheco's actions posed in light of the threat that he was attempting to eliminate. *Scott v. Harris*, 127 S. Ct. 1769, 1778 (2007). In weighing these risks, it is "appropriate . . . to take into account not only the number of the lives at risk, but also their relative culpability." *Id.*

Although *Long* and other cases outline potential guideposts for a reasonableness determination, the Supreme Court has recently cautioned against crafting "an easy-to-apply legal test in the Fourth Amendment context" because "in the end we must still slosh our way through the factbound morass of 'reasonableness.' Whether or not [the officer's] actions constituted application of 'deadly force,' all that matters is whether [the officer's] actions were reasonable." *Id*.

Applying these principles and viewing the evidence in a light most favorable to Plaintiff, the court finds that Officer Pacheco's actions were

14

reasonable as a matter of law.  The evidence presented in a light most favorable to

Plaintiff establishes that prior to the first round of shots: (1) Officer Pacheco saw

Ogden spray Lucia with bear deterrent, Pacheco Decl. ¶ 13; (2) with Officer

Pacecho's gun pointed at him, Ogden ignored Officer Pacheco's commands to stop

and to drop the spray, Pl.'s Ex. 3 at 11; (3) Ogden redirected his spray to Officer

Pacheco, coated him with bear deterrent, and advanced toward him, Defs.' H at 19,

Defs.' SMF 21; (4) Officer Pacheco's attempts to use Cap-Stun pepper spray on

Ogden had no effect on and/or did not reach him, Defs.' SMF 30; (5) Officer

Pacheco believed that Ogden intended to kill him and/or Lucia because he did not

leave, refused to drop the bear deterrent, kept spraying, and continued advancing,

*id.* at 44, and (6) being in closer proximity to Ogden was not a reasonable option.

*Id.* at 46.

   While Ogden did not touch Lucia or Officer Pacheco, Ogden's bear

deterrent can reach up to 30 feet, causes severe pain, and may cause permanent eye

damage.  *See* Defs.' SMF 32, 37, 38.  Pepper spray, including forms much less

potent than this bear deterrent, have been considered dangerous weapons.  *See*

*United States v. Neill*, 166 F.3d 943, 949 (9th Cir. 1999) (finding that pepper spray

used by defendant was a "dangerous weapon," warranting an increase in

sentencing); *Logan v. City of Pullman*, 392 F. Supp. 2d 1246, 1261 (E.D. Wash.

2005) (same).  Indeed, this bear deterrent caused Officer Pacheco the worst pain he has ever felt.  Defs.' SMF 32.  Given these facts -- that Ogden assaulted Lucia and Officer Pacheco with a dangerous weapon,[12] kept attacking Officer Pacheco, and ignored all of Officer Pacheco's commands -- Officer Pacheco had probable cause to believe that Ogden posed a significant threat of death or serious physical injury to Officer Pacheco, Lucia, and others, rendering his first round of shots constitutionally reasonable.  *See Garner*, 471 U.S. at 3.

The court finds that Officer Pacheco's second round of shots was also reasonable as a matter of law.  After being shot from the first round, Ogden stood, Pacheco Decl. ¶ 28, ignored Officer Pacheco's commands to "stay right there, not to move, and to get on the ground," *id.*, began to back away, Pl.'s Ex. 6 at 12, and was shot in the back.  Pl.'s Ex. 8.  Even though Ogden was arguably attempting to leave the area,[13] Officer Pacheco had reason to believe that Ogden was a serious danger to Officer Pacheco, Lucia, and others.  Ogden had ignored all of Officer

---

[12]  At the hearing, Plaintiff argued that it is a question of fact for the jury whether the bear deterrent is a dangerous weapon.  The court disagrees.  Given the manner in which Ogden used the bear deterrent, and that it causes extreme pain and is capable of causing permanent eye damage, Ogden's use of bear deterrent clearly posed at the very least a significant threat of serious physical injury.

[13]  The court recognizes that both Officer Pacheco and Lucia dispute this version, which is based on George Rixey's account from 200 yards away.  However, for purposes of summary judgment the court must view the evidence in a light most favorable to Plaintiff.

16

Pacheco's commands (both before and after the first round of shots), was armed with a weapon that can reach up to 30 feet, and had attacked two people.  Further, Officer Pacheco was in excruciating pain and did not believe that he would be able to defend himself in a physical fight with Ogden.  Defs.' SMF 58.  Accordingly, Officer Pacheco's use of deadly force for a second time was reasonable as well.[14] *See Garner*, 471 U.S. at 11-12; *Blanford v. Sacramento County*, 406 F.3d 1110, 1116 (9th Cir. 2005) (finding that officers had cause to believe that victim armed with sword posed a serious danger to themselves and anyone else in the area "because he failed to heed warnings or commands and was armed with an edged weapon that he refused to put down").

Plaintiff raises various fact disputes, but none of them raises a genuine issue of material fact precluding summary judgment.  First, Plaintiff argues that a fact issue exists whether "Officer Pacheco reasonably could have believed that Lucia was being immediately threatened by Mr. Ogden."  Pl.'s Opp'n 9.  As an initial matter, the relevant inquiry is not whether Officer Pacheco believed that Lucia was being immediately threatened, but whether Officer Pacheco reasonably believed that Ogden posed a "threat of death or serious

---

[14]  Further, in weighing relative culpability, Ogden escalated the confrontation by spraying bear deterrent on Lucia and Officer Pacheco, while Lucia and Officer Pacheco were entirely innocent.

physical injury *to the officer or others*." *Long*, 511 F.3d at 906 (emphasis added).

Even if Lucia were no longer within range of Ogden, Officer Pacheco was

threatened with serious physical injury during each of the times he decided to

shoot his gun.  In any event, there is no question of fact that Lucia was attacked by

Ogden, and under *any* version of events was still in proximity to Officer Pacheco

and Ogden.  From the perspective of a reasonable officer on the scene, as opposed

to using 20/20 vision of hindsight, Officer Pacheco acted reasonably.

Plaintiff also asserts that Officer Pacheco did not act reasonably

because Ogden was attempting to get up and away from him during the second

round of shots.  Pl.'s Opp'n 11.  While Ogden may have been shot in the back, the

court must consider "[a]ll of the facts and circumstances from the beginning of the

encounter." *Blanford*, 406 F.3d at 1118.  As discussed above, the court viewed the

evidence in a light most favorable to Plaintiff, and the circumstances of the *entire*

*encounter* show that Officer Pacheco had reasonable cause to believe that Ogden

posed a serious danger.

Finally, Plaintiff points to Van Blaricom's opinion to argue that fact

questions exist because Officer Pacheco's statement of events supposedly conflicts

with the evidence, and Officer Pacheco did not act reasonably because he was

"blindly" shooting.  *See* Pl.'s Opp'n 12.  The court disagrees.  That Officer

Pacheco's recollection of events does not match precisely with the evidence as construed by Van Blaricom is not a basis for denying summary judgment.[15]  These events occurred rapidly, with only nine minutes passing between Officer Pacheco's arrival at the beach access and shots being reported.  Defs.' Ex. A, Filimoeatu Decl. ¶¶ 4-5.  Officer Pacheco was sprayed upon meeting up with Ogden and Lucia, was in extreme pain due to Ogden's attack, and was constantly strobing his eyes to see.  Defs.' SMF 32, 40.  That witnesses with different roles and with different perspectives recall different versions comes as no surprise.  Further, to the extent Officer Pacheco's vision was impaired, Plaintiff agreed that Officer Pacheco's strobing of his eyes briefly cleared his vision.[16]  Even covered in bear repellent, Officer Pacheco was able to see that Ogden disobeyed his commands to get on the ground, and hit Ogden four times.

In sum, there is no genuine issue of fact that Officer Pacheco acted reasonably under the facts and circumstances of this incident.

---

[15]  In addition to the "fact disputes" raised above, Plaintiff argues that there is a dispute as to the distance between Ogden and Officer Pacheco when Officer Pacheco arrived at the scene, and Lucia's location during the first round of shots.  While there may be some dispute on these facts, they are immaterial to the summary judgment determination.

[16]  Defendants' SMF, at paragraphs 35 and 40, reflects that strobing "only briefly clear[ed] Officer Pacheco's vision" and that he had "to constantly strobe his eyes to see."  In his SMF, Plaintiff stated that for purposes of the Motion for Summary Judgment, he does not dispute the facts alleged in paragraphs 35 and 40.

b. *Violation of a Clearly Established Right*

As discussed above, the court finds that Officer Pacheco acted reasonably as a matter of law.  However, even assuming a violation, the court further finds that Plaintiff has failed to carry his burden with respect to the second factor of the qualified immunity analysis.  *See Galen v. County of L.A.*, 477 F.3d 652 (9th Cir. 2007) (analyzing and affirming district court's determination that (1) there was no constitutional violation, and (2) even if a triable fact existed regarding plaintiff's alleged constitutional injury, the law was not clearly established).

For the second factor, *i.e.*, whether Officer Pacheco violated a right that was clearly established, the court must focus "on whether the officer had fair notice that [his] conduct was unlawful."  *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).  As *Brosseau* explains, "reasonableness is judged against the backdrop of the law at the time of the conduct.  If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation."  *Id.  Brosseau* further provides that:

> [T]his inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition."

[*Saucier*, 533 U.S. at 201].  As we previously said in this very context:

> "[T]here is no doubt that *Graham v. Connor*, *supra*, clearly establishes the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness. Yet that is not enough.  Rather, we emphasized in *Anderson* [*v. Creighton*,] 'that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense:  The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' [*Anderson v. Creighton*,  483 U.S. 635, 640 (1987)].  The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."

*Id.* at 198-99 (*quoting Saucier*, 533 U.S. at 201-202) (some alterations in original and some added).

Plaintiff bears the burden of showing that, at the time of the alleged violation, the constitutional right at issue was clearly established.  *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002).  If the law does not put an officer on notice that his conduct was clearly unlawful, summary judgment based on qualified immunity is appropriate.  *Saucier*, 533 U.S. at 202.

Here, Plaintiff has completely failed to carry his burden of showing that at the time Officer Pacheco allegedly violated Ogden's Fourth Amendment

rights, such rights were clearly established.  Indeed, Plaintiff's Opposition argues only that "Officer Pacheco is not entitled to qualified immunity insofar as he violated Plaintiff's Fourth Amendment rights," *see* Pl.'s Opp'n 6-11, and fails to address in any meaningful way whether, assuming there was a violation, the right violated was clearly established.  For this reason alone, summary judgment in favor of Officer Pacheco is warranted.

Further, the court finds from its own review of the law at the time of this incident that it would not be clear to a reasonable officer that his conduct was unlawful.  While the court could find no case with substantially similar facts and the parties have cited none either, "officials can still be on notice that their conduct violates established law even in novel factual circumstances."  *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).  "Although earlier cases involving 'fundamentally similar' facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding."  *Id.*  Accordingly, the court looks to whether prior cases would have put a reasonable officer on fair notice that the use of deadly force in these circumstances was unlawful, and whether any mistake to the contrary would have been unreasonable.  *See Boyd v. Benton County*, 374 F.3d 773, 781 (9th Cir. 2004) ("In excessive force cases, the inquiry remains whether, under the circumstances, a

reasonable officer would have had fair notice that the force employed was unlawful, and whether any mistake to the contrary would have been unreasonable." (quotation and citation signals omitted)).

As of February 29, 2004, it was clear that an officer cannot "seize an unarmed, nondangerous suspect by shooting him dead," and may not use deadly force unless the suspect poses a significant threat of death or serious physical injury to the officer or others. *Garner*, 471 U.S. at 11.  The Supreme Court in *Garner* further recognized that deadly force may be used to prevent escape where "the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm . . . and if, where feasible, some warning has been given."  *Id.* at 11-12.  Based on *Garner*, courts have found that an officer may act reasonably in using deadly force against a fleeing suspect where the suspect has a weapon and the officer has reason to believe that he may use that weapon.  *See Anderson v. Russell*, 247 F.3d 125, 128 (4th Cir. 2001) (stating that officers shot the suspect after the suspect lowered his hands to his back left pocket after officers had instructed him to raise his hands and get down on his knees); *Thompson v. Hubbard*, 257 F.3d 896, 898 (8th Cir. 2001) (stating that the suspect and the officer were involved in "[a] foot chase," that the suspect "moved his arms

as though reaching for a weapon," and that the officer yelled " 'stop' when [the suspect's] arms continued to move"); *Krueger v. Fuhr*, 991 F.2d 435, 437 (8th Cir. 1993) (stating that the officer ordered the suspect to "freeze" several times during a chase and that the officer saw the suspect "reach to the area of his right hip," to pull out a knife).

   As discussed above, Officer Pacheco was faced with an individual who was armed with a dangerous weapon, had used that dangerous weapon to assault both Officer Pacheco and Lucia, and was continually ignoring his commands to stop and drop to the ground.  While Officer Pacheco certainly would have known from *Garner* and *Graham* that shooting Ogden required an objective finding of probable cause to believe that Ogden posed a threat of serious physical harm to Officer Pacheco or others, Officer Pacheco would not have found fair warning in any caselaw that he could not use deadly force under these circumstances.  Accordingly, the court finds that even if Ogden's Fourth Amendment rights were violated, Officer Pacheco is entitled to qualified immunity.  The court therefore GRANTS Officer Pacheco's Motion for Summary Judgment on Count I of the Complaint.

///

///

## 2.    *County Liability*

Plaintiff argues that the County is liable for ratifying Officer Pacheco's allegedly unconstitutional conduct.  *See* Pl.'s Opp'n 12.  Because the court finds that Officer Pacheco did not violate Ogden's Fourth Amendment rights, the County cannot be held liable.  *See City of L.A. v. Heller*, 475 U.S. 796, 799 (1986) (stating that whether "the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point" where there is no constitutional violation (emphasis omitted)); *Garcia v. Santa Clara County*, 2008 WL 553166, at *2 (9th Cir. Feb. 29, 2008) ("Because Dawson's conduct satisfied the deadly force requirements of the Fourth Amendment, the district court properly concluded that he is entitled to qualified immunity, and Santa Clara County bears no municipal liability for Garcia's death.").  The court therefore GRANTS the County's Motion for Summary Judgment on Count I of the Complaint.

## B.    **State Law Claim for Negligence**

Officer Pacheco argues that summary judgment is warranted on Plaintiff's Hawaii state law claim of negligence.  The court agrees.

Hawaii law recognizes a claim for negligence only where the act at issue involves an unreasonable risk of harm to another.  *Touchette v. Ganal*, 82

Haw. 293, 303, 922 P.2d 347, 357 (1996) (holding that "a negligent act or omission may be one which involves an unreasonable risk of harm to another . . .").  Because the court finds that Officer Pacheco acted reasonably as a matter of law, Plaintiff's negligence claim fails as well.

Further, even if Officer Pacheco did act unreasonably, he is entitled to qualified immunity.  "Hawaii law provides that a nonjudicial government official has a qualified or conditional privilege with respect to his or her tortious actions taken in the performance of his or her public duty." *Edenfield v. Estate of Willets*, 2006 WL 1041724, at *11 (D. Haw. Apr. 14, 2006) (*citing Towse v. State of Hawaii*, 64 Haw. 624, 631, 647 P.2d 696, 702 (1982); *Runnels v. Okamoto*, 56 Haw. 1, 4, 525 P.2d 1125, 1128 (1974)).  To maintain his negligence claim against Officer Pacheco, Plaintiff "must allege and demonstrate by clear and convincing proof that [Officer Pacheco was] stirred by malice and not by an otherwise proper purpose." *Towse*, 64 Haw. at 631-33, 647 P.2d at 702-03.

Here, Plaintiff does not dispute that (1) Officer Pacheco believed that Ogden intended to kill him and/or Lucia, Defs.' SMF 44, (2) Officer Pacheco believed that shooting Ogden was the only option to protect himself and Lucia, *id.* at 45; (3) being in closer proximity to Ogden was not a reasonable option, *id.* at 46, and (4) Officer Pacheco was concerned that Ogden would take his gun and use

26

it to kill him and/or Lucia.  *Id.* at 47.  Plaintiff has neither addressed malice, nor would these facts support an inference of malice.  Accordingly, the court GRANTS Officer Pacheco's Motion for Summary Judgment on Plaintiff's negligence claim.

## C.    Punitive Damages

Because the court finds that Officer's Pacheco's actions were reasonable and no substantive claim remains, Plaintiff is not entitled to punitive damages.

## V.  CONCLUSION

For the reasons discussed above, the court GRANTS Defendants' Motion for Summary Judgment.  Because no Counts of the Complaint remain, the court ORDERS the Clerk of Court to close this case.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, April 21, 2008.



/s/ J. Michael Seabright
_____
J. Michael Seabright
United States District Judge

*Ogden v. Maui et al.*, Civ. No.  06-00113 JMS/LEK; Order Granting County of Maui and Clifford Pacheco's Motion for Summary Judgment